UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOUGLAS MCKISSICK,

     Plaintiff,

v.                            Case No.:  2:20-cv-801-SPC-MRM

MARKS CABINETRY SERVICES,
INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Approval of Settlement and Motion to Dismiss the Case with Prejudice, filed on April 5, 2021. (Doc. 37).  Plaintiff Douglas McKissick and Defendant Marks Cabinetry Services, Inc. request that the Court approve the parties' settlement and dismiss the case with prejudice.  (*Id.* at 10).[1]  After careful review of the parties' submission and the record, the Undersigned respectfully recommends that the joint motion (Doc. 37) be **DENIED without prejudice**.

## BACKGROUND

Plaintiff filed a one-count Complaint in this matter on October 9, 2020.  (Doc. 1).  Specifically, Plaintiff alleges that Defendant failed to pay him one and one-half

_____

[1]  Page number citations to the docket refer to the CM/ECF pagination, not the page numbers listed at the bottom of any given document.

times his base hourly wage rate for hours worked in excess of forty hours per week, in violation of the Fair Labor Standards Act ("FLSA"). (*Id.* at 5-6). As a result, Plaintiff claims that he is owed $29,343.30 in unliquidated overtime damages and $58,686.60 total with liquidated damages. (*Id.* at 5). In his sworn answers to the Court's interrogatories, however, Plaintiff claims that he is owed $157,493.70 in unliquidated overtime damages and $314,987.40 total with liquidated damages. (Doc. 16 at 5).

Defendants filed an Answer on November 9, 2020, denying Plaintiff's allegations and asserting several affirmative defenses. (Doc. 11).

The parties filed their Joint Motion for Approval of Parties' Settlement Agreement and Motion to Dismiss the Case with on April 5, 2021. (Doc. 37).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for

the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

Applying these standards, the Undersigned analyzes the proposed terms of the settlement agreement below.

## ANALYSIS

### I.   Bona Fide Dispute

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties. On October 9, 2020, Plaintiff filed a claim under the FLSA, alleging that Defendant misclassified him as a salaried employee and that Defendant failed to pay Plaintiff full and proper overtime compensation. (*See* Doc. 1 at 4). Defendant denies these allegations, (*see* Doc. 11), and "contends that Plaintiff was paid correctly, and that in the event it is determined that he was not, which is denied,

that Plaintiff was exempt from overtime," (Doc. 37 at 5).  Accordingly, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

The Undersigned addresses the monetary terms, non-cash concessions, and the attorney's fees and costs separately below.  Notably, while the Undersigned finds that the joint motion is due to be denied without prejudice based on concerns about the monetary terms, the inclusion of an Amendment Provision in the settlement agreement, and the undisclosed General Release, the Undersigned addresses the settlement in its entirety in the event that the presiding United States District Judge disagrees with the Undersigned's analysis of any of the problematic provisions or, in the event the presiding United States District Judge adopts the Undersigned's analysis, for the benefit of the parties.

## II.   Monetary Terms

As noted above, in his Complaint, Plaintiff claims that he is owed $29,343.30 in unliquidated overtime damages and $58,686.60 total with liquidated damages. (Doc. 1 at 5).  Plaintiff also alleges that he is entitled to one and one-half times his base hourly wage, calculated as $10.99, which would require Plaintiff's hourly wage rate to be $7.33 ($7.33 x 1.5 = $10.99).  (*See id.*).  In contrast, in his sworn answers to the Court's interrogatories, Plaintiff calculates that he is owed $157,493.70 in unliquidated overtime damages and $314,987.40 total with liquidated damages. (Doc. 16 at 5).  Additionally, in his sworn answers to the Court interrogatories

Plaintiff states that his hourly rate was $38.46 and that his overtime rate was $57.69[2] ($38.46 x 1.5 = $57.69). (*Id.*).

Under the terms of the proposed agreement, Defendant agrees to pay Plaintiff $10,672.50 for overtime compensation allegedly owed and $10,672.50 for liquidated damages. (Doc. 37-1 at 3). The joint motion suggests that the parties relied solely on the calculations alleged in the Complaint: "Plaintiff was allegedly owed $29,343.30 in unliquidated overtime damages, and an equal amount of liquidated damages, totaling $58,686.60." (Doc. 37 at 7). Despite being specifically ordered to reconcile any difference between the calculations provided in sworn answers to the Court's interrogatories and the calculations provided in any joint motion for approval of settlement, (*see* Doc. 26 at 4), however, the joint motion fails to do so, (*see* Doc. 37).

Because the parties failed to resolve or even discuss the large discrepancy between the calculations the parties apparently relied on when negotiating the settlement and Plaintiff's sworn answers to the Court's interrogatories, the Court is unable to evaluate whether the proposed monetary terms are a fair and reasonable resolution of the FLSA dispute. Although the parties assert in a conclusory fashion that the agreement constitutes a fair and reasonable resolution of the bona fide dispute, (Doc. 37 at 8), it is unclear to the Undersigned how they arrive at that

---

[2] Plaintiff's answers to court interrogatories actually state that Plaintiff's overtime rate was $56.69, which the Undersigned construes as a typographical error because the math set forth above supports an overtime rate of $57.69. (*See* Doc. 16 at 5). The Undersigned assumes, therefore, that Plaintiff intended to claim an overtime rate of $57.69 in his answers to the court interrogatories.

conclusion under the circumstances when the settlement amounts are so drastically different from the amounts claimed in sworn interrogatory answers. As a result, the instant motion is due to be denied without prejudice to the parties' ability to file a renewed motion that adequately addresses this concern.

## III.   Non-Cash Concessions

The proposed settlement agreement contains several non-cash concessions. A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement and require their own fairness finding. *See Jarvis v. City Elec. Supply Co.*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), report and recommendation adopted, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933203 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

However, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Undersigned addresses each of the non-cash concessions made by the parties under the proposed settlement below

### A.    Amendment Provision

The proposed settlement agreement contains a provision that grants the parties leave to amend the agreement:  "This Agreement may not be amended, modified, altered, or changed, except by a written agreement which is both signed by all parties and which makes specific reference to this Agreement."  (Doc. 37-1 at 4).  This Court has previously found that an identical provision cannot be approved because it "leaves 'the parties free to circumvent *Lynn's Food [Stores]* review through *post hoc* modifications of an already-approved agreement.'"  *Dexheimer v. Enjoy the City N., Inc.*, No. 6:18-cv-1980-Orl-76EJK, 2020 WL 5822195, at *3 (M.D. Fla. Apr. 13, 2020) (quoting *Dumas v. 1 Amble Realty, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018)).

Moreover, while the Court has previously invoked a severability provision to strike these provisions and approve an otherwise valid agreement, *see, e.g.*, *Wood v. Surat Invs., LLC*, No. 6:19-cv-1681-Orl-41EJK, 2020 WL 2840565, at *4 (M.D. Fla. May 15, 2020), *report and recommendation adopted,* No. 6:19-cv-1681-Orl-41EJK, 2020 WL 2838861 (M.D. Fla. June 1, 2020), the proposed settlement agreement here does not contain a severability provision that would support such an approach, (*see* Doc. 37-1).

Accordingly, the Undersigned recommends that the joint motion be denied without prejudice because it contains a settlement agreement "that is not in its final

form" and has an "opportunity for amendment."  *See Dexheimer*, 2020 WL 5822195,

at *3 (internal quotation and citation omitted).

### B.    General Release

Although not included in the proposed settlement agreement, the parties'

motion states that the parties negotiated a "General Release:"

> The Defendant and Plaintiff have also entered into a
> General Release whereby the Plaintiff is to receive
> compensation.  Of course, the money being paid to Plaintiff
> was negotiated separate from the amount Plaintiff is
> receiving under the FLSA Agreement.    Importantly,
> Plaintiff's Counsel is not receiving any compensation from
> the General Release.

(*Id.* at 7).

Mutual general releases in FLSA settlement agreements are generally

problematic.  *See Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM,

2018 WL 2440542, at *2 (M.D. Fla. May 29, 2018), *report and recommendation*

*adopted*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2451845 (M.D. Fla. May 31,

2018).  Accordingly, the *Lynn's Food Stores* analysis necessitates a review of the

proposed consideration as to each term and condition of the settlement, including

forgone or released claims.  *Shearer v. Estep Const., Inc.*, No. 6:14-cv-1658- Orl-41,

2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015).  Such provisions may be

accepted when the Court can determine that such a clause is fair and reasonable

under the facts of the case.  *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation*

*Maintenance, LLC*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D.

Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018).

Without the ability to review the General Release and without the benefit of the parties' substantive briefing as to the fairness and reasonableness of the General Release, the Court simply cannot determine the reasonableness or fairness of the proposed settlement. Accordingly, the Undersigned recommends that notwithstanding their assertions that the General Release was negotiated separately, the parties be directed to file the General Release with the Court and explain the consideration given in exchange for it.

### C. Release of FLSA Claims

The proposed settlement agreement contains a "Release of FLSA Claims" that provides that "[t]his Agreement shall constitute a release of all claims Plaintiff might have under the FLSA against Defendant." (Doc. 37-1 at 2). The provision further provides that:

> Plaintiff hereby knowingly and voluntarily releases and forever discharges Defendant, its owners, officers, directors, shareholders, members, employees, agents, representatives, insurers, parent corporations, predecessors, successors, assigns [sic], subsidiaries, affiliates, and insurers, and their past, present and future directors, owners, officers, employees, agents, representatives, insurers and assigns, and attorneys both individually and in their capacities as directors, officers, shareholders, members, employees, agents, insurers and attorneys (collectively "Releasees") of and from any and all claims arising under the FLSA against any of the Releasees which Plaintiff has or might have as of the date of the execution of this Agreement.

(*Id.*).  Because the release is limited in scope to claims arising under the FLSA, the Undersigned finds that such a limited waiver does not preclude approval of the settlement agreement.  *See Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 8669879, at *4 (M.D. Fla. Sept. 23, 2016), *report and recommendation* adopted, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5746376 (M.D. Fla. Oct. 4, 2016) (approving a release that is limited to claims arising under the FLSA).  Nevertheless, this narrow release must necessarily and logically be considered in conjunction with the general release addressed *supra* to determine whether the scope of the combined releases is fair and reasonable.

### D.   Waiver of Jury Trial

The proposed settlement agreement also contains a jury trial waiver, in which both Plaintiff and Defendant agree to "waive any right to a jury trial with respect to any claims for breach of this Agreement."  (Doc. 37-1 at 4).  Notably, parties have a general right to a jury trial on breach of contract claims.  *Stitzel v. New York Life Ins. Co.*, No. 6:07-cv-147-Orl-22DAB, 2010 WL 11508117, at *3 (M.D. Fla. Mar. 25, 2010).  When a party waives a valid right to a jury trial as part of an FLSA settlement agreement, this Court has found that a plaintiff's waiver of a jury trial does not render an agreement unfair or unreasonable so long as the plaintiff receives adequate consideration.  *See, e.g.*, *Lowery v. Auto Club Grp., Inc.*, No. 6:17-cv-359-Orl-40GJK, 2017 WL 3336464, at *4 (M.D. Fla. Aug. 3, 2017) (approving a jury waiver provision when the plaintiff received separate monetary consideration); *Fusic v. King*

*Plastic Corp.*, No. 2:17-cv-390-FtM-38CM, 2018 WL 1725902, at *3 (M.D. Fla. Apr. 3, 2018), *report and recommendation adopted*, No. 2:17-cv-390-FtM-38CM, 2018 WL 1705645 (M.D. Fla. Apr. 9, 2018) (approving a jury waiver provision, finding that the defendant's reciprocal waiver constituted sufficient, independent consideration).

Moreover, the Undersigned notes that a jury trial waiver is nothing more than a non-cash concession, like a general release or a non-disparagement provision. As noted above, courts have found that when a non-cash concession is reciprocal such that it inures to the benefit of both parties, adequate consideration has been exchanged. *See, e.g.*, *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016) (collecting cases in support of the proposition that courts have upheld non-disparagement clauses when there is a reciprocal neutral reference agreement, inuring to a plaintiff's benefit).

Here, because the waiver is reciprocal, applying to both Plaintiff and Defendant, the Undersigned finds that the mutuality of the waiver serves as adequate, independent consideration to Plaintiff to agree to the non-cash concession. The Undersigned, therefore, finds that the waiver is does not render the settlement agreement unfair or unreasonable.

## IV.    Attorney's Fees and Costs

The proposed settlement agreement specifies that Defendant agrees to pay a total of $15,655.00 in attorney's fees and costs, payable to Richard Celler Legal, P.A.

(Doc. 37-1 at 3).  The parties assert that the fees and costs "were negotiated separately from and without regard to the settlement sums being paid to Plaintiff." (Doc. 37 at 9).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.  If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable.  Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

**CONCLUSION**

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.      The Joint Motion for Approval of Settlement and Motion to Dismiss

the Case with Prejudice (Doc. 37) be **DENIED without prejudice**.

2.      The parties be ordered to elect one of the following options by an

appropriate deadline to be selected by the presiding United States

District Judge:

   a.      File an amended joint motion to approve a settlement agreement

   that adequately addresses the issues identified herein and file a

   fully executed settlement agreement that is binding on relevant

   parties if approved by the Court; or

   b.      File a notice of their intent to proceed under the operative Case

   Management and Scheduling Order (Doc. 39).

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida

on June 30, 2021.

_____

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. The parties are warned that the Court will not extend these deadlines. To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties