UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOUGLAS MCKISSICK,

    Plaintiff,

v.                                                 Case No.:  2:20-cv-801-SPC-MRM

MARKS CABINETRY SERVICES, INC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Amended Joint Motion for Approval of Settlement and Motion to Dismiss the Case with Prejudice.  (Doc. 46).  Plaintiff Douglas McKissick and Defendant Marks Cabinetry Services, Inc. renew their request that the Court approve the parties' settlement and dismiss the case with prejudice.  (*Id.* at 11).[1]  After careful review of the parties' submission and the record, the Undersigned respectfully recommends that the amended joint motion (Doc. 46) be **GRANTED**.

## BACKGROUND

Plaintiff filed a one-count Complaint in this matter on October 9, 2020.  (Doc. 1).  Specifically, Plaintiff alleges that Defendant failed to pay him one and one-half

---

[1] Page number citations to the docket refer to the CM/ECF pagination, not the page numbers listed at the bottom of any given document.

times his base hourly wage rate for hours worked in excess of forty hours per week, in violation of the Fair Labor Standards Act ("FLSA"). (*Id.* at 5-6). As a result, Plaintiff claims that he is owed $29,343.30 in unliquidated overtime damages and $58,686.60 total with liquidated damages. (*Id.* at 5). In his sworn answers to the Court's interrogatories, however, Plaintiff claims that he is owed $157,493.70 in unliquidated overtime damages and $314,987.40 total with liquidated damages. (Doc. 16 at 5).

On November 9, 2020, Defendant filed an Answer, denying Plaintiff's allegations and asserting several affirmative defenses. (Doc. 11).

The parties filed a Joint Motion for Approval of Parties' Settlement Agreement and Motion to Dismiss the Case on April 5, 2021, which was denied without prejudice based upon the Undersigned's recommendation. (*See* Docs. 37, 41-43).

The parties executed a new settlement agreement (*see* Doc. 46-1) and now ask the Court to approve it. (*See* Doc. 46). The parties also provide a copy of a separately executed side agreement titled a "Waiver and Release Agreement," which they refer to in their motion as a "General Release." (*See* Doc. 46-2; *see also* Doc. 46 at 8-9). Although not explicit, the parties' latest motion implies that they also seek approval of this side agreement. (*See* Doc. 46 at 11 (asking the Court to approve "the settlement outlined in this motion and the attached settlement *agreements*" (emphasis added))).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

3

*Id.*

Applying these standards, the Undersigned analyzes the proposed terms of the settlement agreement below.

## ANALYSIS

As noted above, this is the parties' second attempt to obtain court approval of their proposed settlement. (*See* Docs. 37, 41, 42-43). In the interests of judicial economy and efficiency, the Undersigned incorporates by reference herein the findings and recommendations contained in the previous Report and Recommendation dated April 5, 2021 (Doc. 37), which the presiding United States District Judge accepted and adopted in full (Doc. 43). Notably, because the parties subsequently executed a new FLSA settlement agreement with modified terms (*see* Doc. 46-1), some of the Undersigned's previous findings do not apply to the new agreement or the side agreement.[2]

The Undersigned previously identified three areas of potential concern with the fairness and reasonableness of the proposed settlement that precluded this Court's approval at that time: (1) the parties' failure to address the discrepancy between the unpaid wage calculations Plaintiff provided in sworn answers to the Court's interrogatories and the calculations provided in the original joint motion

---

[2] Specifically, neither the new FLSA settlement agreement (Doc. 46-1) nor the side agreement (Doc. 46-2) include an amendment provision or a jury trial waiver. Accordingly, those issues are no longer an impediment to approving the new proposed settlement and are not addressed again herein.

supporting the monetary terms of the then-proposed settlement (*see* Doc. 41 at 4-5); (2) the existence of an amendment provision in the then-proposed settlement agreement (*id.* at 7-8); and (3) the parties' failure to provide the Court with a copy of their separately executed "General Release" (*id.* at 8-9). Neither the new proposed FLSA settlement agreement nor the newly disclosed side agreement contain an amendment provision. Thus, no further discussion of that particular issue is warranted. The Undersigned addresses below the parties' attempts, if any, to address the remaining issues in their most recent motion (Doc. 46), in the new proposed settlement agreement (Doc. 46-1), and/or in their side agreement (Doc. 46-2). Insofar as the parties' new settlement agreement contains different monetary and non-monetary terms requiring further consideration, the Undersigned addresses those below as well.

**I.  New Monetary Terms in the FLSA Settlement Agreement and Reconciling Plaintiff's Interrogatory Answers**

In his Complaint, Plaintiff claims that he is owed $29,343.30 in unliquidated overtime damages and $58,686.60 total with liquidated damages. (Doc. 1 at 5). Plaintiff also alleges that he is entitled to one and one-half times his base hourly wage, calculated as $10.99, which would require Plaintiff's hourly wage rate to be $7.33 ($7.33 x 1.5 = $10.99). (*See id.*). In contrast, in his sworn answers to the Court's interrogatories, Plaintiff calculates that he is owed $157,493.70 in unliquidated overtime damages and $314,987.40 total with liquidated damages. (Doc. 16 at 5). Additionally, in his sworn answers to the Court interrogatories

5

Plaintiff states that his hourly rate was $38.46 and that his overtime rate was $57.69[3] ($38.46 x 1.5 = $57.69). (*Id.*).

Under the terms of the currently proposed settlement, Defendant agrees to pay Plaintiff $11,122.50 for overtime compensation and back wages allegedly owed and $11,122.50 for liquidated damages and interest. (Doc. 46-1 at 2).

The parties' amended motion states "[e]ven if Plaintiff prevails, his range of recovery is uncertain" and "[t]he [p]arties disagree over basic factual allegations pertaining to and the number of hours Plaintiff worked." (Doc. 46 at 7). The parties then explain in detail the rationale supporting the proposed settlement amounts and the reasons for the discrepancy between those amounts and Plaintiff's prior answers to the Court's interrogatories:

> In the Complaint, Plaintiff asserted that he worked an average of thirty (30) hours of overtime per week, but was not paid full and proper overtime compensation. Instead, Plaintiff asserted to have been paid a flat rate of $3,076.93 every two weeks, or $1,538.46 per week. Therefore, Plaintiff alleged to have been paid for all hours worked, but not at the time and one-half amount, as required by the FLSA. Plaintiff's hourly rate is approximately $21.98, and his half-time rate is approximately $10.99. This results in $329.70 being owed per week, for eighty nine (89) weeks, which totals $29,343.30 in unliquidated overtime damages owed to Plaintiff, and an equal amount of liquidated damages, totaling $58,686.60.

---

[3] Plaintiff's answers to court interrogatories actually state that Plaintiff's overtime rate was $56.69, which the Undersigned construes as a typographical error because the math set forth above supports an overtime rate of $57.69. (*See* Doc. 16 at 5). The Undersigned assumes, therefore, that Plaintiff intended to claim an overtime rate of $57.69 in his answers to the court interrogatories.

6

The Court Interrogatories contain a calculation based on the wrong overtime rate, and instead of using a half-time calculation, which is proper, a time and one-half calculation was used in error.

The Defendant produced documentation which substantiates that Plaintiff was not an hourly paid employee, and, therefore, there was no argument that this case is a half-time case, not a time and-one half case. As such, the calculation in the Complaint is the proper calculation, not the calculation used in the Court's Interrogatories. The parties engaged in settlement discussions, and because progress was being made, and there was no dispute between the parties as to the fact that this is a half-time case, the Court Interrogatories were not amended. Plaintiff apologizes to the Court for the error and will work to ensure same does not occur in the future.

However, the foregoing demonstrates the discrepancy between the calculations contained within the Complaint and the Court's Interrogatories and why the calculation in the Complaint is the proper calculation, and the calculation that was utilized and relied upon when negotiating the settlement.

With regard to the settlement, Plaintiff is receiving $21,345.00[4] pursuant to the settlement, split equally between wages and liquidated damages, which is nearly thirty-seven percent of what his possible recovery would have been. The Defendant and Plaintiff have also entered into a General Release whereby the Plaintiff is to receive

---

[4] The Court construes this amount to be a scrivener's error in the motion – and likely a vestigial artifact of the parties' original motion (*see* Doc. 37 at 7) – because the operative settlement agreement specifies that Plaintiff is to receive $22,245.00 in settlement proceeds, with half of that amount attributed to "unpaid overtime compensation and back wages" and half attributed to "liquidated damages and interest," (*See* Doc. 46-1 at 2). In that regard, the reference in the settlement agreement to "interest" is perplexing because the amounts specified leave no room for the inclusion of interest. (*Id.*). The Undersigned construes the settlement to involve zero dollars allocated towards the payment of interest.

7

>compensation. Of course, the money being paid to Plaintiff was negotiated separate from the amount Plaintiff is receiving under the FLSA Agreement. Importantly, Plaintiff's Counsel is not receiving any compensation from the General Release.
>
>Plaintiff asserted that Defendant also contends that while Plaintiff claims to be entitled to be paid a certain amount of overtime and that the payroll and time records, and other employment related documents, show that Plaintiff was not working overtime. Furthermore, it is possible that Plaintiff would be found to be exempt, and, in that scenario, would receive nothing. In light of the uncertainty of the amounts, if any, Plaintiff would recover if he were to continue litigating his claims, the Court should find that the settlement is fair and reasonable.

(Doc. 46 at 7-9).

The Undersigned finds this detailed explanation of the monetary terms of the proposed settlement of the FLSA claim to be satisfactory. As a result, the Undersigned finds that the monetary terms of the proposed settlement are a fair and reasonable resolution of the parties' bona fide dispute.

## II. Non-Cash Concessions

Some of the non-cash concessions that appeared in the parties' original FLSA settlement agreement no longer appear in the new settlement agreement. Nevertheless, the new proposed settlement agreement (Doc. 46-1) and the newly disclosed side agreement (Doc. 46-2) still contain certain non-cash concessions that require scrutiny.

A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation"

8

components of a settlement and require their own fairness finding. *See Jarvis v. City Elec. Supply Co.*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933203 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

However, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Undersigned addresses below each of the non-cash concessions made by the parties under the current proposed settlement agreement and the side agreement.

A.  **Judicial Review of the Side Agreement and the Non-Cash Concessions Therein**

As a threshold consideration, the Undersigned finds that the parties' newly disclosed side agreement is an indispensable part of the ultimate settlement of Plaintiff's FLSA claims and the action. It is clear that that side agreement only exists because Plaintiff brought this action alleging violations of the FLSA and the parties wish to enter into a comprehensive settlement that provides Plaintiff and Defendant with a clean break. The Undersigned has no doubt, therefore, that the side

9

agreement is an indispensable part of and inextricably intertwined with the proposed settlement of Plaintiff's FLSA claim, notwithstanding the parties' initial attempts to separate and distinguish the two agreements to avoid judicial scrutiny of the side agreement.

This Court has previously made clear that parties cannot circumvent the *Lynn's Food Stores* analysis by entering into undisclosed side agreements that are part of the overall settlement, even if the parties mutually agree that they are not pertinent to the Court's review of the FLSA settlement. *See Inglis v. Magruder*, No. 6:19-cv-1406-Orl-40GJK, 2020 WL 7700157, at *2 (M.D. Fla. July 8, 2020). For example, in *Inglis v. Magruder*, the parties sought to avoid judicial review of their separate general release, arguing that because the Court found the FLSA settlement to be fair and reasonable, the Court should not consider the separate general release. *Id.* United States District Judge Paul Byron rejected this argument – made in a joint objection to the United States Magistrate Judge's Report and Recommendation – explaining:

> This is the "stay-in-your-lane" argument, and it ignores the Court's obligation to approve only those settlements that (1) are reasonable to the employee, *and* (2) further implementation of the FLSA in the workplace. The parties seek to limit the Court's review simply to deciding whether the money paid to the employee is reasonable given the facts of the case. Stated differently, the parties want the Court to abandon its duty to ensure the settlement is consistent with the implementation of the FLSA in the workplace. The stay-in-your-lane argument is clearly inconsistent with the law.

*Id.* (internal citation omitted; emphasis in original).

Following the decision in *Inglis*, jurists of this Court have made clear that parties may not decide whether to disclose separate general releases by "choos[ing] what is or is not related to an FLSA settlement." *See Sanchez v. La Cantina Cocina Mexicana, Inc.*, No. 6:21-cv-337-Orl-JA-EJK, 2021 WL 3054806, at *2 (M.D. Fla. May 17, 2021) (citation omitted); *see also Mirles v. Golden SAJ, LLC*, No. 6:20-cv-1144-Orl-CEM-DCI, 2021 WL 2954286, at *7-8 (M.D. Fla. Mar. 26, 2021). Additionally, when, like here, the side agreement is plainly intertwined with the FLSA settlement and does not purport to settle any existing claims, the release is clearly subject to judicial review. *See Inglis*, No. 6:19-cv-1406-PGB-GJK, Doc. 36 at 10-11 (M.D. Fla. May. 11, 2020), *report and recommendation adopted*, 2020 WL 7700157. And, as noted below, the parties' side agreement in this case goes far beyond a mere general release secured by separate consideration because it contains other non-cash concessions, not all of which inure to Plaintiff's benefit.

In sum, because the parties' side agreement is plainly an indispensable part of the ultimate settlement of this action, any approval of the settlement of the bona fide FLSA dispute must include a determination of the fairness and reasonableness of the general release and other non-cash concessions contained within the side agreement. (*See* Doc. 46-2).

To that end, the side agreement contains three (3) non-cash concessions warranting scrutiny: (1) a broad general release by Plaintiff, (Doc. 46-2 at 1-3); (2) a waiver by Plaintiff of any re-employment with Defendant or other "Released Parties," as that term is broadly defined in the side agreement, (*id.* at 3); and (3) a

11

mutual non-disparagement provision, (*id.*). The agreement provides that Defendant will pay Plaintiff $1,000.00 as consideration for the side agreement, without attributing portions of that amount to any of the included non-cash concessions by the Plaintiff. (*Id.* at 1).

### 1. General Release

The general release included in the side agreement is very broad – although it expressly does not encompass FLSA claims or other claims that cannot be released by law – and it is not mutual because Plaintiff is the only releasing party. (*See* Doc. 46-2 at 1-3).

General releases in FLSA settlement agreements are problematic. *See Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *2 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2451845 (M.D. Fla. May 31, 2018). Accordingly, the *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement, including forgone or released claims. *Shearer v. Estep Const., Inc.*, No. 6:14-cv-1658- Orl-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015). Such provisions may be accepted when the Court can determine that such a clause is fair and reasonable under the facts of the case. *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and*

*recommendation adopted*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018).

Considering the nature of the release and the atypically generous amount of consideration paid to the Plaintiff for the same (*i.e.*, as much as $1,000.00, less any amounts that may be attributed to the additional concessions discussed below), the Undersigned finds that the general release is fair and reasonable under the circumstances. In reaching this conclusion, the Undersigned places great weight on the fact that Plaintiff is represented by competent counsel who are not receiving any compensation from the side agreement and, therefore, have every reason to advise Plaintiff adequately concerning the significance and value of a one-sided general release. (*See* Doc. 46 at 9; *see also* Doc. 46-2).

### 2. Waiver of Reemployment

The parties' side agreement provides that Plaintiff "agrees not to knowingly attempt to obtain employment with the Company or any of the Released Parties." (Doc. 46-2 at 3). The parties' motion does not specifically address this provision, explain the parties' reasons for including it, or describe any specific monetary consideration attributed to it. Nevertheless, the Undersigned finds that the inclusion of this non-cash concession by Plaintiff should not preclude judicial approval of the proposed settlement because it is clear that some portion of the $1,000.00 to be paid under the side agreement includes consideration for the concession. (*See id.* at 1 ("McKissick acknowledges and agrees that the Funds are being paid in consideration for his execution of *and obligations under* this Release Agreement." (Emphasis

13

added)).  Given the atypically generous amount of consideration being paid, if even $100 of the funds are attributable to Plaintiff's agreement to not seek reemployment, the Undersigned finds that the side agreement would still be fair and reasonable.  In this regard, the Undersigned again places great weight on the fact that Plaintiff is represented by competent counsel who are not receiving any compensation from the side agreement and, therefore, have every reason to advise Plaintiff adequately concerning the significance and value of this concession.  (*See* Doc. 46 at 9; *see also* Doc. 46-2).

Accordingly, the Undersigned recommends that that the settlement be approved notwithstanding the presence of this non-cash concession.

### 3. Non-Disparagement

The parties' side agreement also provides that "[t]he parties agree that they will not make, publish (including by way of social media sources), or communicate to any person or entity any negative, disparaging, false, and/or defamatory statements about each other." (Doc. 46-2 at 3).  The parties' motion does not specifically address this provision, explain the parties' reasons for including it, or describe any specific monetary consideration attributed to it.

Notably, "[c]ourts within this circuit routinely reject . . . non-disparagement clauses contained in FLSA settlement agreements because they 'thwart Congress's intent to ensure widespread compliance with the FLSA.'" *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-CV-710-ORL-22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-CV-710-ORL-

22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (quoting *Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14-CV-615-ORL-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014)). The Court has also noted that "[p]rovisions in a FLSA settlement agreement that call for . . . prohibiting disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-CV-461-J-15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. Apr. 19, 2010); *Valdez v. T.A.S.O. Props., Inc.*, No. 8:09-CV-2250-T-23TGW, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010)).

Nevertheless, when such provisions are negotiated for separate consideration or there is a reciprocal agreement that benefits all parties, the Court may approve the provision. *See Bell*, 2016 WL 5339706, at *3; *Smith*, 2014 WL 5690488, at *4 (citing *Caamal v. Shelter Mortg. Co.*, No. 6:13-CV-706-ORL-36, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013)).

Here, the non-disparagement provision is supported by separately negotiated consideration and, by its plain language, is mutual. (*See* Doc. 46-2 at 1, 3). Regarding consideration, it is clear that some portion of the $1,000.00 to be paid under the side agreement includes consideration for the concession. (*See id.* at 1). Given the atypically generous amount of consideration being paid, if even $100 of the funds are attributable to the non-disparagement provision, the Undersigned finds that the side agreement would still be fair and reasonable. The Undersigned continues to place great weight on the fact that Plaintiff is represented by competent

15

counsel who are not receiving any compensation from the side agreement and, therefore, have every reason to advise Plaintiff adequately concerning the significance and value of this additional concession. (*See* Doc. 46 at 9; *see also* Doc. 46-2). Even if no consideration is attributed to this concession, the Undersigned that the mutual nature of the concession is sufficient to find it fair and reasonable.

For these reasons, the Undersigned recommends that that the settlement be approved with the non-disparagement clause included.

### B.   Release of FLSA Claims in the FLSA Settlement Agreement

The proposed settlement agreement contains a "Waiver and Release of FLSA Claims." (Doc. 46-1 at 3). The release is limited to "all claims, causes of action, claims, debts, costs, expenses, rights, obligations, and liabilities (including attorneys' fees and costs), that McKissick has against any of the Released Parties under the FLSA through the date of his signing of this FLSA Agreement." (*Id.*). Because this release is limited in scope to claims arising under the FLSA, the Undersigned finds that such a limited waiver does not preclude approval of the settlement agreement. *See Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 8669879, at *4 (M.D. Fla. Sept. 23, 2016), *report and recommendation* adopted, No. 6:14-cv-149-Orl-37GJK, 2016 WL 5746376 (M.D. Fla. Oct. 4, 2016) (approving a release that is limited to claims arising under the FLSA). Even considering this narrow release in conjunction with the general release in the parties' side agreement, the Undersigned still finds it to be fair and reasonable.

### III.     Attorney's Fees and Costs in the FLSA Settlement Agreement

The proposed settlement agreement specifies that Defendant agrees to pay a total of $15,655.00 in attorney's fees and costs, payable to Richard Celler Legal, P.A. (Doc. 46-1 at 2).  The parties assert that the fees and costs "were negotiated separately from and without regard to the settlement sums being paid to Plaintiff." (Doc. 46 at 10).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.  If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

## CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The Amended Joint Motion for Approval of Settlement and Motion to Dismiss the Case With Prejudice (Doc. 46) be **GRANTED**;

2. The FLSA Settlement Agreement, Waiver, and Release (Doc. 46-1) and the Waiver and Release Agreement (Doc. 46-2) be approved jointly as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claim; and

3. The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Fort Myers, Florida on November 24, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. The parties are warned that the Court will not extend these deadlines. To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties